UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

JACQUELYN W.[1],
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 3:23-cv-338
Newman, J.
Litkovitz, MJ.

**REPORT AND
RECOMMENDATION**

Plaintiff Jacquelyn W. brings this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB). This matter is before the United States Magistrate Judge for a Report and Recommendation on plaintiff's statement of errors (Doc. 7), the Commissioner's response in opposition (Doc. 9), and plaintiff's reply memorandum (Doc. 10).

**I. Procedural Background**

    **A. Plaintiff's Previous Application**

Plaintiff previously applied for disability benefits in March 2015. That application was denied initially and upon reconsideration. Plaintiff requested and was granted a *de novo* hearing before Administrative Law Judge (ALJ) Elizabeth A. Motta. ALJ Motta denied plaintiff's application on September 6, 2017. (Tr. 55-75). On January 26, 2018, the Appeals Council denied plaintiff's request for review (Tr. 76-81), making the ALJ's decision the final decision of the Commissioner.

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

**B. Plaintiff's Current Application**

Plaintiff protectively filed another application for DIB on January 16, 2020, alleging disability beginning September 7, 2017, due to a right knee injury with prescribed brace, back injury resulting in bulging discs in lumber spine, right leg involvement, ambulation with prescribed cane, anxiety, depression, diverticulitis, asthma, and high blood pressure. (Tr. 213-14, 253). Her application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Gregory M. Beatty. Plaintiff and a vocational expert (VE) appeared telephonically and testified at the ALJ hearing on May 6, 2021. (Tr. 31-54). On June 8, 2021, the ALJ issued a decision denying plaintiff's application. (Tr. 12-30). The Appeals Council denied plaintiff's request for review, making the ALJ's decision final for purposes of judicial review. (Tr. 1–6).

Plaintiff appealed the denial of her application to this Court. *See Jacquelyn W. v. Comm'r of Soc. Sec.*, No. 3:22-cv-175 (S.D. Ohio). On a joint motion to remand, this matter was remanded to the Commissioner for further proceedings. (Tr. 2177-2190).

On March 9, 2023, ALJ Beatty conducted a second hearing. (Tr. 2134-2151). ALJ Beatty issued a decision on April 4, 2023 finding plaintiff not under a disability. (Tr. 2114-2124). Plaintiff did not request review by the Appeals Council opting, instead, to appeal directly to this Court.

**II. Analysis**

**A. Legal Framework for Disability Determinations**

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

2

The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

ALJ Beatty applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. [Plaintiff] last met the insured status requirements of the Social Security Act on December 31, 2018.

2. [Plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of September 7, 2017, through her date last insured of December 31, 2018 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, [plaintiff] had the following severe impairments: lumbar degenerative disc disease, osteoarthritis, peripheral neuropathy, depressive disorder, and an anxiety disorder (20 CFR 404.1520(c)).

4. Through the date last insured, [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] find[s] that, through the date last insured, [plaintiff] had the residual functional capacity [RFC] to perform light work as defined in 20 CFR 404.1567(b) except [plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit for 6 hours. She can stand for 6 hours. She would need to alternate between sitting and standing for 10 minutes per hour. She can walk for 6 hours. She can push and pull consistent with her ability to lift and carry. She can climb ramps and stairs occasionally. She can never climb ladders, ropes, or scaffolds. She can balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. She can never work at unprotected heights or around moving mechanical parts. She must avoid concentrated exposure to vibration. She is limited to no strict production pace.

6. Through the date last insured, [plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).[2]

7. [Plaintiff] was born [in]… 1965 and was 53 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8. [Plaintiff] has a limited education (20 CFR 404.1564).

---

[2] Plaintiff's past relevant work was as a truck driver, a medium, very heavy as performed, semi-skilled position. (Tr. 2122, 2141, 2147).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is "not disabled," whether or not [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [plaintiff] could have performed (20 CFR 404.1569 and 404.1569a).[3]

11. [Plaintiff] was not under a disability, as defined in the Social Security Act, at any time from September 7, 2017, the alleged onset date, through December 31, 2018, the date last insured (20 CFR 404.1520(g)).

(Tr. 2117-2124).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

---

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations in the national economy such as inspector (30,000 jobs), routing clerk (12,000 jobs), and folder (25,000 jobs). (Tr. 2123, 2148).

5

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors[4]

Plaintiff argues that the ALJ used the wrong legal standard, thus "creating an unwarranted additional procedural burden for [plaintiff] to overcome and violating the statutory framework of the Social Security Act." (Doc. 7 at PAGEID 3257). She further contends that the ALJ impermissibly interpreted medical evidence that was not reviewed by a medical source (*Id.* at PAGEID 3267-70) and failed to carry the step five burden (*Id.* at 3270-71).

The Commissioner counters that the ALJ appropriately considered the prior ALJ's decision and gave the evidence the required "fresh look" in finding that plaintiff could perform a reduced range of simple light work. According to the Commissioner, the ALJ properly considered the newly submitted evidence and found that new and material evidence supported greater limitations than previously found. In making that determination, the ALJ properly considered the record as a whole, and evaluated the opinions in accordance with the appropriate regulations. (Doc. 9 at PageID 3278-85).

---

[4] The parties generally agree with the ALJ's summary of plaintiff's medical history. (*See* Doc. 7 at PAGEID 3254; Doc. 9 at PAGEID 3278). Specific medical records will be discussed as relevant to the analysis.

### *1. The ALJ Satisfied the Requirements of Earley*

If a social security claimant has filed a prior application, res judicata may apply to the administrative proceedings. *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933 (6th Cir. 2018) (citing *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997)). *See also* 42 U.S.C. § 405(h) ("The findings and decision of the Commissioner of Social Security after a hearing shall be binding on all individuals who were parties to such a hearing."). The Sixth Circuit held in *Drummond* that "absent changed circumstances" the findings made by an ALJ as part of a prior disability determination are binding on a subsequent ALJ in later proceedings. 126 F.3d at 842. Following the decision in *Drummond*, the Commissioner issued Acquiescence Ruling (AR) 98-4(6), 1998 WL 283902 (June 1, 1998). AR 98-4(6) provides:

> When adjudicating a subsequent disability claim with an adjudicated period under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or ruling affecting the finding or the method for arriving at the finding.

*Id.* at *3.

In June 2018, the Sixth Circuit clarified its decision in *Drummond* and the ways in which the decision seeks to protect principles of "consistency between proceedings and finality with respect to resolved applications." *Earley*, 893 F.3d at 931. The Sixth Circuit explained that when a claimant who has filed a prior application files "a second application for the same period of time finally rejected by the first application and offers no cognizable explanation for revisiting the first decision, res judicata would bar the second application." *Id.* at 933. But the Court of Appeals also explained that "[w]hen an individual seeks disability benefits for a distinct period of time, each application is entitled to review." *Earley*, 893 F.3d at 933. "[A]n individual may

file a second application—for a new period of time—for all manner of reasons," and res judicata would not apply to the second application. *Id*. When a claimant seeks disability benefits for a distinct time period, she can "obtain independent review" of the application so long as she "presents evidence of a change in condition or satisfies a new regulatory threshold." *Id*. at 932. Principles of consistency and finality "do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability," while bearing in mind the record and findings in the prior proceedings. *Id*. at 931. As the Sixth Circuit elaborated:

> That is why it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application.
>
> At the same time, an applicant remains free to bring a second application that introduces no new evidence or very little new evidence after a failed application. But she should not have high expectations about success if the second filing mimics the first one and the individual has not reached any new age (or other) threshold to obtain benefits. What's past likely will be precedent in that setting—as indeed it should be in a system designed to apply the law consistently to similarly situated individuals.

*Id.* at 933-34. In rejecting the suggestion that "the administrative law judge should completely ignore earlier findings and applications," the Court of Appeals determined that "[f]resh review is not blind review. A later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id.* at 934.

The Sixth Circuit recently applied these principles in *Dennis D. v. Comm'r of Soc. Sec.*, No. 23-3667, 2024 WL 1193662 (6th Cir. Mar. 20, 2024), where counsel advanced arguments similar to those at bar. In *Dennis D.*, the Sixth Circuit examined whether the ALJ in that case treated his review of the new disability application as if he were bound by the prior disability

8

application, thereby denying the claimant the "fresh look" *Earley* requires. The Court of Appeals determined that where an ALJ engages in an in-depth review and analysis of (1) the new evidence related to the claimant's current claim period, and (2) the evidence and findings from the prior decision, *Earley's* "fresh look" is satisfied. *Id*. at *4. The Court of Appeals found that "it is the responsibility of the ALJ reviewing the claim for the later unadjudicated period to determine how much weight to accord both the prior decision and any newly submitted evidence; this includes the effect of a new regulatory threshold, if applicable." *Id*. at *4. The Sixth Circuit examined the ALJ's statements at the administrative hearing that he was not "bound" by any prior decisions; the ALJ's discussion of the claimant's hearing testimony; and the ALJ's review of the medical records for the relevant period, including those related to the prior application and current application, and determined the ALJ did not consider himself bound by the earlier ALJ ruling.

The Sixth Circuit also rejected the view advanced by plaintiff here that it is improper for the subsequent ALJ "to measure the new medical evidence 'against the backdrop' of the prior RFC finding instead of assessing the new evidence on its own merits." *Dennis D.*, 2024 WL 1193662, at *6 (citing *Nadia A.T. v. Comm'r of Soc. Sec.*, No. 3:22-cv-12, 2023 WL 2401723, at *4 (S.D. Ohio Mar. 8, 2023)). The Court of Appeals found "it is perfectly acceptable for a subsequent ALJ to presume the accuracy of a prior finding," for this promotes "finality, efficiency, and consistent treatment of like cases." *Dennis D.*, 2024 WL 1193662, at *6.

> [T]he suggestion that an ALJ considering a subsequent application should not evaluate a claimant's new records for evidence of a significant change in relation to a prior valid finding strikes us as an overly broad reading of *Earley*. Presuming accuracy is not the same as treating prior findings as binding.

*Id.*

9

In this case, ALJ Beatty addressed *Drummond* and plaintiff's previous disability application:

> Generally, the prior findings and determinations are controlling in subsequent, unadjudicated periods, unless there is new and material evidence or a showing of "changed circumstances." *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), *acq.*, Social Security Administration, AR 98-4(6) and *Dennard v. Secretary of Health and Human Services*, 907 F.2d 598 (6th Cir. 1990), *acq.*, Social Security Administration, AR 98-3(6). New evidence will be considered material only if it both differs from that presented in the prior claim *and* warrants a finding different from that made in the decision on the prior claim (AR-98-3(6) and AR 98-4(6)).
>
> After considering all the evidence of record, I find new and material evidence exists to support a departure from the findings reached in the prior decision. However, the prior unfavorable decision remains undisturbed and *res judicata* applies through September 6, 2017, the date of the prior decision.

(Tr. 2114-15).

Plaintiff contends that ALJ Beatty erred in considering ALJ Motta's 2017 decision because, "[w]hile ALJ Beatty provided a review of the newly submitted evidence and provided a (slightly) different RFC, he did so against the backdrop of ALJ Motta's prior 2017 findings." (Doc. 7 at PAGEID 3257). As an initial matter, plaintiff's argument relies extensively on a prior decision, *Nadia A.T. v. Comm'r of Soc. Sec.*, No. 3:22-cv-12, 2023 WL 2401723, at *4-5 (S.D. Ohio March 8, 2023), quoting that decision for nearly two full pages. (Doc. 7 at PAGEID 3262-64). However, as has been recognized repeatedly, the Sixth Circuit's decision in *Dennis D.* effectively abrogated the holding in *Nadia A.T. See, e.g., Krista L. v. Comm'r of Soc. Sec.*, No. 3:23-cv-144, 2024 WL 1596323, at *5, n.5 (S.D. Ohio April 12, 2024), *report and recommendation adopted*, 2024 WL 4227236 (S.D. Ohio Sept. 18, 2024) (Newman, J.) ("Given the Sixth Circuit's decision in *Dennis D.* and its apparent abrogation of the district court case holdings upon which plaintiff relies [*Nadia A.T.*], the Court declines to find error where an ALJ considers new evidence 'against the backdrop' of a previous ALJ's finding."). *See also Braden*

10

*G. v. Comm'r of Soc. Sec.*, No. 2:23-cv-2626, 2024 WL 3324876, at *8 (S.D. Ohio July 8, 2024), *report and recommendation adopted*, 2024 WL 4198177 (S.D. Ohio Sept. 16, 2024) ("*Dennis D.* appeared to abrogate *Nadia A.T. v. Comm'r of Soc. Sec.* . . . and similar authority in which some courts have held that remand is required if an ALJ uses the prior ALJ's RFC determination as a 'mandatory starting place.'"). *See also Gooden v. Comm'r of Soc. Sec.*, No. 23-3927, 2024 WL 2830817, *4 (6th Cir. June 4, 2024) (Courts should ignore "rote recitation of a legal standard" and "determine only whether the second ALJ *actually* afforded the new application a 'fresh look' under *Earley*.").

In this case, plaintiff admits that the ALJ thoroughly reviewed the evidence. (Doc. 7 at PAGEID 3266) ("the fact that [ALJ Beatty] provided a review of the newly submitted evidence and provided a (slightly) different RFC is immaterial to the [alleged] error of law"); (Doc. 10 at PAGEID 3288) ("[Plaintiff] does not argue that the ALJ did not provide a review of the newly submitted evidence."). Indeed, plaintiff makes no substantive challenge to the ALJ's review of the evidence at all. She does not cite any evidence in the record she believes ALJ Beatty failed to consider or identify instances where ALJ Beatty relied on the prior decision in making his own determination.

In addition, ALJ Beatty's written decision indicates that he did not consider himself bound by ALJ Motta's previous findings. Instead, ALJ Beatty found that "new and material evidence exists to support a departure from the finding reached" by the prior ALJ. (Tr. 2115). He then proceeded through the five step evaluation process without reliance on ALJ Motta's earlier findings. (Tr. 2115-24). He thoroughly evaluated plaintiff's medical records from September 2017 through the date of the decision before ultimately deciding that plaintiff was not disabled. (Tr. 2117-24).

11

Plaintiff's contention that the ALJ applied the wrong legal standard is based on outdated, abrogated legal precedent and misstates the applicable legal standard. Therefore, plaintiff's first statement of error should be overruled.

### 2. *Plaintiff's Second Statement of Error Lacks Merit*

Plaintiff's second alleged error is that "the ALJ impermissibly interpreted a critical body of medical evidence that was not reviewed by any medical source relied upon the by the ALJ." (Doc. 7 at PAGEID 3253). In support of this contention, plaintiff argues that the state agency medical consultants on whom the ALJ relied in crafting the RFC, Leon Hughes, M.D., and Steve McKee, M.D., failed to consider four specific records:

1. "Applied a knee immobilizer to the right leg and sized the walker for home use." (Tr. 525);

2. "MRI of the right knee dated October 10, 2017 showed moderate to large joint effusion with a plica in addition to mild chondromalacia. . . . Vincent Anthony Bonanno, M.D. assessed '[s]ignificant degenerative process' of the right knee." (Tr. 518);

3. "An abnormal EMG revealed left peroneal neuropathy." (Tr. 454); and

4. "Pain management beginning in October of 2018 for increasing pain and a multitude of prior failed treatment measures. ([Tr.] 1077.) Several positive objective physical examination findings were documented, including: antalgic gait, slow gait, and cane use; severe tenderness to palpation of the lumbar spine; positive straight leg raise; and tenderness to palpation of the bilateral sacroiliac joint." (Tr. 1077-10180[5]).

---

[5] This citation appears to be a typographical error in plaintiff's statement of errors. The medical records plaintiff cites are found at Tr. 1077-80.

(Doc. 7 at PAGEID 3269). However, plaintiff's contention fails for several reasons.

First, plaintiff's allegation is factually incorrect. Dr. Hughes specifically considered the medical records at issue in the medical portion of the disability determination at the initial level. The sentence "[a]pplied a knee immobilizer to the right leg and sized the walker for home use" appears in plaintiff's medical record for an October 5, 2017 visit to a hospital emergency department after plaintiff reported "being in a physical altercation with another woman" who weighed more than 300 pounds. (Tr. 522-25). Dr. Hughes referenced the October 2017 record in which plaintiff was "seen for knee pain from altercation." (Tr. 95). Dr. Hughes further noted the October 10, 2017 MRI that showed "moderate to large joint effusion with a plica" suggesting a "ruptured popliteal cyst" with "[m]ild chondromalacia" (Tr. 96) and the October 2018 Dayton Interventional Radiology report finding antalgic, slow gait with cane use, and tenderness at both the right and left lumbar regions (Tr. 97).

Second, even if Dr. Hughes had not considered the evidence at issue, the records plaintiff cites are themselves reports from plaintiff's treating medical professionals. (Tr. 454, 518, 525, and 1077-80). Thus, any raw medical data had already been interpreted by plaintiff's physicians. *See Michael G. v. Comm'r of Soc. Sec.*, No 2:21-cv-5467, 2022 WL 11615881, at *8 (S.D. Ohio Oct. 20, 2022) ("The only raw medical data—the EMG—was read and interpreted by the doctor in his report."). *See also Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727 (6th Cir. 2013) (ALJ did not interpret raw medical data where x-rays, "the only raw medical data, had already been read and interpreted by a radiologist.").

Third, once the Commissioner noted in his response memorandum that the cited medical records, in fact, had been considered by the state agency medical consultants (Doc. 9 at PAGEID

13

3283), plaintiff did not dispute the Commissioner's assertion (Doc. 10). Therefore, plaintiff's second statement of error should be overruled.

### 3. *The ALJ's RFC is Supported by Substantial Evidence.*

Plaintiff's final contention is that the ALJ failed to carry the step five burden because, by finding that plaintiff can sit for six hours, stand for six hours, and walk for six hours, the ALJ effectively considered plaintiff's abilities over a 12 to 18 hour day rather than the eight-hour workday prescribed by the regulations. (Doc. 7 at PAGEID 3270-71). The Commissioner counters that a "more reasonable interpretation of the ALJ's RFC finding" is that during each eight-hour workday, plaintiff is capable of sitting, standing, or walking for six hours. (Doc. 9 at PAGEID 3285).

At step five of the sequential evaluation process, the burden shifts to the Commissioner "to identify a significant number of jobs in the economy that accommodate the claimant's [RFC] (determined at step four) and vocational profile." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The Commissioner may meet his burden through reliance on a VE's testimony in response to a hypothetical question. To constitute substantial evidence in support of the Commissioner's burden, the hypothetical question posed to the VE must accurately reflect the claimant's physical and mental limitations. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002); and *Varley v. Sec'y of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987).

In this case, the ALJ found that:

> [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except [she] can lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit for 6 hours. She can stand for 6 hours. She would need to alternate between sitting and standing for 10 minutes per hour. She can walk for 6 hours.

14

(Tr. 2119). Plaintiff does not challenge the hypothetical question posed to the VE on which the RFC finding rests. Rather, she contends that the ALJ's finding that she can sit, stand, or walk for six hours means that he improperly considered her abilities over a 12 to 18-hour day, rather than the eight hour workday required by SSR 96-9p.[6] (Doc. 7 at PAGEID 3271). However, the ALJ specifically found that plaintiff had the RFC to perform "light work" with additional limitations. (Tr. 2119). According to the glossary included in SSR 83-10 (whose stated purpose includes "to provide definitions of terms and concepts frequently used in evaluating disability under the medical-vocational rules"):

> *Light work.* The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.

Considering the definition of "light work" that the ALJ specifically found plaintiff could perform (with additional limitations), the Court must agree with the Commissioner that the only reasonable reading of the ALJ's RFC finding is that the ALJ found plaintiff able to sit, stand, or walk for six hours during an eight-hour workday. Accordingly, the ALJ carried his step five burden, and plaintiff's third statement of error should be overruled.

### IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's statement of errors (Doc. 7) be **OVERRULED** and the Commissioner's non-disability finding be **AFFIRMED**.

2. Judgment be entered in favor of the Commissioner and this case be closed on the

---

[6] SSR 96-9p provides in relevant part, "RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis; i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule."

docket of the Court.

Date: 10/28/2024

Karen L. Litkovitz
Chief United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JACQUELYN W.,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 3:23-cv-338
Newman, J.
Litkovitz, MJ.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).